THEODORE P. K. MORTENSEN *v.* BOARD OF TRUS-
TEES OF THE EMPLOYEES' RETIREMENT SYS-
TEM, STATE OF HAWAII.

No. 4920.

THOMAS I. FREEMAN *v.* BOARD OF TRUSTEES OF
THE EMPLOYEES' RETIREMENT SYSTEM,
STATE OF HAWAII.

No. 4921.

JULY 28, 1970.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ., AND
CIRCUIT JUDGE VITOUSEK IN PLACE OF
KOBAYASHI, J., DISQUALIFIED.

OPINION OF THE COURT BY LEVINSON, J.

These cases involve the question whether the proce-
dures utilized by the Employees' Retirement System, in

denying accidental disability retirement benefits to the appellants, were in accord with the Hawaii Administrative Procedure Act (HRS §§ 91-1 to 91-18 (1968)) and comported with the requirements of procedural due process guaranteed by the state and federal constitutions. We think that the State did not follow the applicable provisions of the Hawaii Administrative Procedure Act which afford the appellants their statutory and constitutional rights to procedural due process. The cases must therefore be reversed and remanded for hearings consistent with the provisions of the Hawaii Administrative Procedure Act.

As there are two cases consolidated on appeal, the facts must be separately set out. In No. 4920 appellant Mortensen, while working for the Board of Water Supply of the City and County of Honolulu, felt pain in his back when he turned to his left to pick up a 14-inch pipe wrench. Three years later, after treatment by at least six doctors, an application was filed with the State for service-connected disability retirement benefits under HRS §§ 88-67 and 88-69 (1968) (now included in HRS §§ 88-77 and 88-79 (Supp. 1969)). The Medical Board of the Retirement System examined the applicant, considered his doctors' reports, and certified that Mortensen was incapacitated for the further performance of duty and that the incapacity was likely to be permanent. The Medical Board further determined that there was insufficient evidence to determine that the accident caused the present disability.

The aforementioned conclusions were submitted to the Board of Trustees in a form report from the Medical Board. The Board of Trustees then referred that determination to the Medical Review Board for an advisory opinion. The Medical Review Board reported to the Board of Trustees that "the 'accident' as claimed by the applicant

did not in itself result in his disability." An intervening rule promulgated by the Board of Trustees caused a second appeal from the Medical Board to the Medical Review Board on the issue of causation which again resulted in an unfavorable determination for Mortensen.

Judicial review was sought pursuant to HRS § 91-14 (1968). The circuit court held, among other things, that a proper hearing had been held before the Medical Board, that the proceeding was not a "contested case" within HRS § 91-1(5), (6) (1968), and that the proceedings therefore comported with the Hawaii Administrative Procedure Act. The court further concluded that in view of the technical subject matter, due process had been afforded the appellant in the hearing before the Medical Board and no trial-type hearing was required.

In No. 4921 appellant Freeman suffered a neck injury in an automobile collision while serving as a liquor law inspector with the Finance Department of the City and County of Honolulu. Freeman later filed an application for accidental disability retirement benefits pursuant to HRS § 88-69 (1968) (now included in HRS § 88-79 (Supp. 1969)). The Medical Board examined Freeman and certified that he was not incapacitated for the further performance of duty or for gainful employment and his disability was not the result of the automobile accident. This decision was appealed to the Board of Trustees pursuant to rules promulgated under HRS § 88-73 (1968) (now, as amended, included in HRS § 88-82 (Supp. 1969)).

The Board of Trustees rejected the Medical Board's finding that the disability was not the result of an accident while in the actual performance of duty. The remaining question of the existence and extent of disability was referred to a Medical Review Board which determined that Freeman was not incapacitated for further performance of duty. He was therefore denied any service-connected

disability retirement benefits. Judicial review was sought and the circuit court held, among other things, that the procedures comported with the Hawaii Administrative Procedure Act. The decisions of the circuit court in both cases were appealed to this court and consolidated for argument and consideration.

## I. APPLICABILITY OF THE HAWAII ADMINISTRATIVE PROCEDURE ACT

The statutory scheme of the Pension and Retirement systems embodied in HRS §§ 88-1 to 88-230 (1968) (now, as amended, included in HRS §§ 88-1 to 88-190 (Supp. 1969)) is the focal point of these two cases. Briefly, a member of the Employees' Retirement System who feels he has suffered permanent disability or occupational disability which was the "natural and proximate result of an accident occurring while in the actual performance of duty ... or as the cumulative result of some occupational hazard" may apply to and be retired by the Board of Trustees of the system. HRS §§ 88-67, 88-69 (1968) (now included in HRS §§ 88-77, 88-79 (Supp. 1969)). In order to be retired the Medical Board must certify that the member is incapacitated for gainful employment and his incapacity is likely to be permanent. There are therefore two primary conditions for retirement which could involve factual disputes: (1) whether there is permanent incapacity for gainful employment or duty and (2) whether the incapacity or disability is the result of an accident occurring while in the actual performance of duty. HRS §§ 88-67(a)(4),(c) and 88-69(a)(4),(c) (1968) (now included in HRS §§ 88-77(a)(4),(d) and 88-79(a)(4),(d) (Supp. 1969)).

The initial resolution of these factual issues is divided between the Medical Board and the Board of Trustees.

The Medical Board, as designated by the Board of Trustees under HRS § 88-31 (1968) (now included in HRS § 88-31 (Supp. 1969)), determines the *degree of incapacity* while the Board of Trustees has the power to determine the *causation* issue under HRS §§ 88-67 and 88-69 (1968) (now HRS §§ 88-77 and 88-79 (Supp. 1969)). The decision of the Medical Board on the extent of disability may be appealed to the Board of Trustees, however, under HRS § 88-73 (1968) (now, as amended, included in HRS § 88-82 (Supp. 1969)), thus giving the Board of Trustees statutory jurisdiction at that point in the administrative process over both of these issues.

However, HRS § 88-73 (1968) (now, as amended, included in HRS § 88-82 (Supp. 1969)) further provides that the Board of Trustees "may" refer the case to a Medical Review Board whose decision shall be final and binding. The decision of the Medical Review Board is specifically exempted from the due process requirements of the Hawaii Administrative Procedure Act under HRS § 88-73 (1968) (now, as amended, included in HRS § 88-82 (Supp. 1969)). In addition the Board of Trustees has promulgated certain procedural rules which require that the Medical Review Board hear any appeal to the Board of Trustees if the appeal is to be heard at all, thus eliminating any chance of a full trial-type hearing before the Board of Trustees.[1]

The appellee Board of Trustees argues that the statutory scheme forecloses any trial-type hearing under the Hawaii Administrative Procedure Act and, furthermore, that the technical nature of the subject matter precludes an adversary trial-type hearing. The appellants argue that there must be a trial-type hearing at some point in

---

[1] *Procedural Rules of the Employees' Retirement System of the State of Hawaii to Implement Act 53, Session Laws of Hawaii 1964, Relating to Appeals from Decisions of the Medical Board.*

this statutory scheme. They argue that it is statutorily mandated by the Hawaii Administrative Procedure Act and, concomitantly, that procedural due process requires a trial-type hearing.

The Hawaii Administrative Procedure Act is applicable only if there is a "contested case" as defined by HRS § 91-1(5) (1968) which states that:

"Contested case" means a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing.

We think the appeal to the Board of Trustees authorized by HRS § 88-73 (1968) (now, as amended, included in HRS § 88-82 (Supp. 1969)) envisions a proceeding in which there is a determination of the legal rights of the appellants. That section states in pertinent part that:

Any other provision herein to the contrary notwithstanding, an employee who is not satisfied with the decision of the medical board may appeal the decision to the board of trustees. ... The board of trustees, *after hearing the appeal,* may appoint an independent review board of licensed physicians to review the matter and the decision of the medical review board shall be final and binding. ... (Emphasis added).

The appeal to the Board of Trustees is further held immediately prior to judicial review and is therefore an "agency hearing" under HRS § 91-1(6). We view the opportunity which the Board of Trustees has to refer the case to a Medical Review Board as purely discretionary and not mandated by HRS § 88-73 (1968) (now, as amended, included in HRS § 88-82 (Supp. 1969)). That section says the Board of Trustees "may" appoint a Medical Review Board to review the matter. Therefore, an applicant may regard a denial of his retirement benefits by the Board of Trustees as a "contested case" at the point where the

Board of Trustees either denies his appeal or it is adjudicated on the merits against the applicant.

In construing the statutory scheme for handling applications for service-connected disability retirement benefits, the due process provisions of the Hawaii Administrative Procedure Act embodied in HRS § 91-9 (1968) are applicable in the hearing before the Board of Trustees.[2] These provisions include, among other things, proper notice to the applicant and the opportunity for the appli-

[2] HRS § 91-9 (1968) provides:

Contested cases; notice; hearing; records.

(a) In any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice.

(b) The notice shall include a statement of:
  (1) The date, time, place, and nature of hearing;
  (2) The legal authority under which the hearing is to be held;
  (3) The particular sections of the statutes and rules involved;
  (4) An explicit statement in plain language of the issues involved and the facts alleged by the agency in support thereof; provided, that if the agency is unable to state such issues and facts in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved, and thereafter upon application a bill of particulars shall be furnished;
  (5) The fact that any party may retain counsel if he so desires.

(c) Opportunities shall be afforded all parties to present evidence and argument on all issues involved.

(d) Any procedure in a contested case may be modified or waived by stipulation of the parties and informal disposition may be made of any contested case by stipulation, agreed settlement, consent order, or default.

(e) For the purpose of agency decisions, the record shall include:
  (1) All pleadings, motions, intermediate rulings;
  (2) Evidence received or considered, including oral testimony, exhibits, and a statement of matters officially noticed;
  (3) Offers of proof and rulings thereon;
  (4) Proposed findings and exceptions;
  (5) Report of the officer who presided at the hearing;
  (6) Staff memoranda submitted to members of the agency in connection with their consideration of the case.

(f) It shall not be necessary to transcribe the record unless requested for purposes of rehearing or court review.

(g) No matters outside the record shall be considered by the agency in making its decision except as provided herein.

cant to be heard and to present evidence and argument. The right to cross-examination and other evidentiary rules which are necessary to a trial-type adversary proceeding are included in HRS § 91-10 (1968).

## II. PROCEDURAL DUE PROCESS

On the question of procedural due process required in these cases, the decision of *Goldberg* v. *Kelly,* 397 U.S. 254 (1970) is highly persuasive, if not controlling. In *Goldberg* the United States Supreme Court affirmed the proposition that procedural due process requires a trial-type hearing in a proceeding before a state welfare board where a recipient contests the state's termination of his public assistance payments. With respect to the requirements for a trial-type hearing, we see no meaningful distinction between the benefits accruing to a welfare recipient and those owed an applicant for service-connected disability retirement benefits.[3] In an age of increased governmental largess where benefits are often granted because of legislative grace rather than any common law obligation to make such benefits available, the courts have been slow to accord judicial protection to those entitled to these benefits. Yet in light of their widespread economic effects and importance to the recipients, such benefits have indeed become "the new property." See Reich, *The New Property,* 73 Yale L.J. 733 (1964). *Goldberg* v. *Kelly,* 397 U.S. at 262 n.8. Such benefits or entitlements must be subject to procedural safeguards especially where the benefits sought provide "the means to obtain essential food, clothing, housing and medical care." *Goldberg* v. *Kelly,* 397 U.S. at 264 (1970); see *Sniadach* v. *Family Finance Corp.,* 395 U.S. 337 (1969). These procedural safeguards recognize a

---

[3] No issue of *when* the hearing is to be afforded an applicant is raised by this case unlike *Goldberg.* We only decide that a trial-type hearing must be had at some time in the administrative process.

time-tested principle that "[t]he essence of justice is largely procedural." 1 Davis, *Administrative Law Treatise* § 7.20 at 506 (1958).

The fact that expert medical testimony and evidence is required in resolving the contested facts cannot distinguish this case from *Goldberg, supra.* In personal injury cases before a jury, where the issues are the cause and extent of damages, complex medical testimony is frequently offered with vigorous cross-examination and rebuttal evidence presented.

Neither side has cited a case requiring or denying a trial-type hearing where similar facts were involved. Our independent research reveals, however, that the Oregon Supreme Court in *White v. State Industrial Accident Commission,* 227 Ore. 306, 362 P.2d 302 (1961), held that a factual determination by a "medical review board" that the applicant did not qualify under the Oregon Occupational Disease Statute did not require a trial-type hearing before that board. We disagree with this decision of the Oregon court. Aside from the fact that the Oregon case dealt with an occupational disease, while the present cases deal with occupational accidents, not diseases, and the variation in the statutory schemes, the Oregon court's characterization of the medical review board's function as performing an "examination" or "inspection" begs the essential question. *White v. State Industrial Accident Commission, supra* at 319, 362 P.2d at 308. Where an ascertainment of the truth is more likely through the use of a trial-type hearing, it should be used at some point in the administrative process. Real expertise will not be hindered but strengthened by its exposure to the fire of cross-examination, rebuttal evidence, and argument. An examination or inspection by an expert is simply no substitute for a trial-type hearing except, perhaps, in certain limited circumstances.

We hold that constitutional due process and the Hawaii Administrative Procedure Act require that each of the appellants receive a hearing on the contested issues of fact before the Board of Trustees of the Employees' Retirement System. The hearings should be conducted in accordance with the provisions of the Hawaii Administrative Procedure Act embodied in HRS § 91-9 (1968) providing for hearings in contested cases.

Reversed and remanded for further proceedings in accordance with this opinion.

*Edward H. Nakamura* (*Bouslog & Symonds* of counsel) for appellants.

*Morton King,* Senior Deputy Attorney General (*Bertram T. Kanbara,* Attorney General, State of Hawaii, with him on the brief) for appellees.